IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WILLIAM HOFFMAN,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | 1:22-CV-00787-DAE |
| UNITED STATES OF AMERICA,<br>*Defendant* | §<br>§<br>§ | |

**ORDER**

Before the Court are Defendant's Motion to Exclude Testimony of Michael Reyes, filed September 19, 2023 (Dkt. 22); Defendant's Motion to Exclude Testimony of Randall F. Dryer, M.D., filed November 6, 2023 (Dkt. 27); Defendant's Opposed Motion to Extend Discovery Deadline, field November 13, 2023 (Dkt. 28); Plaintiff's Motion for Leave to File Objections to the Testimony of Defense Expert Austin Folley, M.D., filed November 13, 2023 (Dkt. 30); and the associated response and reply briefs.[1]

**I. Background**

Plaintiff William Hoffman filed this negligence action under the Federal Torts Claims Act, 28 U.S.C. § 2674, against Defendant United States of America. Plaintiff alleges that he was driving his car in Travis County, Texas on February 28, 2020 "when his vehicle was violently rear-ended by a vehicle being negligently operated by Laurel Moore Barnhill in the scope of her employment with the United States Fish and Wildlife Service, proximately causing severe personal injuries to Plaintiff and damages to Plaintiff's vehicle." Am. Compl. (Dkt. 5) ¶ 3.2. Plaintiff alleges that Barnhill proximately caused the injuries and damages to him by driving her car while distracted;

---

[1] By Text Orders issued September 27, November 7, and December 14, 2023, the District Court referred the motions to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

following too closely behind his car; failing to keep a proper lookout; failing to control her car in a reasonable and prudent manner; failing to control her car's speed in a reasonable and prudent manner; and failing to turn her car to avoid the collision. *Id.* ¶ 3.3.

Defendant now moves to exclude the testimony of two of Plaintiff's designated experts: Michael Reyes, Ph.D., and Randall F. Dryer, M.D. Defendant also moves to extend the discovery deadline to allow limited discovery into Plaintiff's witness Sherri Hoffman Clifton. For his part, Plaintiff moves for leave to object to the testimony of defense expert Austin Folley, M.D.

## II.  Defendant's Motion to Extend Discovery Deadline

The Scheduling Order required all discovery to be completed by October 27, 2023. Dkt. 16 ¶ 7. On that day, Plaintiff served his Second Supplement to his Initial Disclosures to Defendant, designating Clifton, his sister, as a witness to testify "concerning facts related to Plaintiff's physical pain, mental anguish and physical impairment caused by the crash." Dkt. 28-2 at 3.

Defendant asks the Court to reopen discovery for 60 days "on a limited basis to allow for Defendant to serve document and deposition subpoenas and conduct any necessary actions related to those subpoenas." Dkt. 28 at 2. Defendant contends that because of Plaintiff's "late disclosure, Defendant had no opportunity to serve Ms. Clifton with a document subpoena and a subpoena to testify at deposition in this case" before the discovery deadline. *Id.* at 1. In his Certificate of Conference, Defendant's counsel states: "I certify that on November 13, 2023, Defendant's counsel emailed Plaintiff's counsel to confer in a good-faith attempt to resolve this matter by agreement. Plaintiff's counsel agreed to extend the discovery deadline to allow for an oral deposition, but he could not agree to the issuance of subpoenas for information from the non-party witness." *Id.* at 3. Defense counsel then filed this Motion.

In response, Plaintiff argues that Defense counsel did not sufficiently confer with Plaintiff's counsel before filing this Motion:

2

> Plaintiff agrees to extend the discovery deadline to allow for Plaintiff's sister's oral deposition and for obtaining information that is reasonably calculated to lead to the discovery of admissible evidence that is not overly burdensome on the non-party witness.
>
> However, regarding proposed document subpoenas Defendant seeks to serve on Plaintiff's sister, Defendant's counsel refused to confer on the nature and extent of information Defendant seeks to obtain from Plaintiff's sister. When Plaintiff's counsel informed Defendant's counsel that more information on the nature and extent of the information sought from Plaintiff' sister was needed, Defendant's counsel elected to cease attempts at conferring and instead filed their Motion.

Dkt. 33 at 1.

Under Local Rule CV-7(g), the Court "may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have first conferred in a good-faith attempt to resolve the matter by agreement and, further, certifies the specific reason that no agreement could be made." Parties "do not satisfy the conference requirements simply by requesting or demanding compliance, because the parties need to confer, deliberate, converse, or compare views with a goal of resolving the dispute." *Patel v. Shipper Servs. Express*, No. 5:20-CV-00267-OLG, 2020 WL 10056291, at *1 (W.D. Tex. Oct. 19, 2020).

The Court finds that counsel for Defendant did not satisfy Local Rule CV-7(g) by conferring sufficiently with counsel for Plaintiff before filing this Motion, and Defendant's Opposed Motion to Extend Discovery Deadline (Dkt. 28) is **DENIED** for that reason. The parties have already agreed that Defendant will take Clifton's deposition, and the Court expects counsel to fulfill their obligation to "attempt to resolve such issues amicably" by reaching agreement on relevant and proportional document discovery required by her last-minute disclosure. *Collins v. Easynews, Inc.*, No. A-06-CA-451-LY, 2007 WL 9701619, at *2 (W.D. Tex. May 17, 2007); *see also, e.g.*, FED. R. CIV. P. 1 (stating that rules should be employed by court and parties "to secure the just, speedy, and inexpensive determination of every action and proceeding").

### III. Plaintiff's Motion for Leave to File Rule 702 Objections

The Scheduling Order required any objection to the reliability of an expert's proposed testimony under Federal Rule of Evidence 702 to be made "within eleven (11) days from the receipt of the written report of the expert's proposed testimony, or within eleven (11) days from the completion of the expert's deposition, if a deposition is taken, whichever is later." Dkt. 16 ¶ 6. Plaintiff completed the deposition of Folley, Defendant's biomechanical expert, on October 27, 2023, making any objections to Folley's testimony due by November 7, 2023. Plaintiff did not object by the deadline and asks the Court to extend the deadline to permit him to object to Folley's testimony "within two business days of the Court's Order and/or at time specifically determined by the Court." Dkt. 30 at 2.

Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." "To show good cause, the party seeking to modify the scheduling order has the burden of showing that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Squyres v. Heico Cos. L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015). Courts consider these factors when determining whether the moving party has established good cause for delay: (1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification of the scheduling order; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice. *Id.* Plaintiff addresses only the first and third good cause factors.

Plaintiff has not shown good cause for his failure to timely object to Folley's testimony. As to the first factor, Plaintiff's counsel alleges that he missed the deadline because he "mis-calendared" the objection deadline as November 10, 2023 because the parties' Joint Proposed Scheduling Order had proposed that the parties Rule 702 objections were due "not later than 14 days of receipt of the written report of the expert's proposed testimony or not later than 14 days of the expert's

deposition, if a deposition is taken, whichever is later." Dkt. 30 at 1; Dkt. 8 ¶ 5. As to the third factor, Plaintiff argues that Defendant will not be prejudiced by the late filing of his objections because the trial is not until April 2024.

"Attorney neglect or inadvertence will not constitute good cause supporting modification." 6A MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 1522.2 (3d ed. April 2023 Update).[2] Plaintiff does not show that the Scheduling Order deadline could not have been reasonably met despite his due diligence. Accordingly, Plaintiff's Motion for Leave to File Objections to the Testimony of Defense Expert Austin Folley, M.D. (Dkt. 30) is **DENIED**.

### IV. Motion to Exclude Dr. Michael Reyes' Testimony

Plaintiff designated Michael Reyes, Ph.D. BME as a testifying expert witness "in the areas of biomechanical engineering, accident reconstruction, and matters like and related to these areas of expertise." Dkt. 17 at 2. Reyes testified at deposition that he was hired to perform a crash reconstruction of the collision at issue. Reyes Tr., Dkt. 22-2 at 15:13-16. Reyes' expert report states that Barnhill's car rear-ended Plaintiff's car, which then crashed into another car driven by Brian Hein. Reyes concludes that the collision was preventable and that Barnhill was responsible for the collision. Defendant objects to several opinions in Reyes' expert report regarding causation and violations of the Texas Transportation Code under Federal Rule of Evidence 702 as inadmissible legal opinions by an expert, outside the scope of Reyes's specialized knowledge, or both.

---

[2] *See also Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (finding that scheduling mistake by counsel's office was not satisfactory explanation for plaintiff's failure to timely designate expert witnesses); *Soliz v. United States*, No. 5:16-CV-370-DAE, 2018 WL 6427342, at *3 (W.D. Tex. June 13, 2018) ("Mere inadvertence on the part of the movant and the absence of prejudice to the non-movant are insufficient to establish 'good cause.'") (citation omitted); *Md. Manor Assocs. v. City of Hous.*, 816 F. Supp. 2d 394, 401 (S.D. Tex. 2011) (explaining that misunderstanding a scheduling order "does not establish good cause for filing an untimely motion for leave to amend").

5

**A. Legal Standard**

The Supreme Court's landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. *Reitz v. Woods*, 85 F.4th 780, 787 (5th Cir. 2023). "Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 592-93). As amended December 1, 2023, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (quoting *Daubert*, 509 U.S. at 594-95). The proponent of expert testimony bears the burden of establishing the reliability of the testimony. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).

Because the *Daubert* test focuses on the underlying theory on which the opinion is based, the proponent of expert testimony need not prove that the expert's testimony is correct, but that the testimony is reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). This determination of reliability includes a preliminary determination "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

Trial courts ordinarily apply four factors when considering the reliability of scientific evidence: (1) whether the technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Id.* This test of reliability is flexible, and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire*, 526 U.S. at 141.

When conducting a *Daubert* analysis, the trial court's main focus should be on determining whether the expert's opinion will assist the trier of fact. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). Assisting the trier of fact means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). But the "helpfulness threshold is low: it is principally . . . a matter of relevance." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 459 n.14 (5th Cir. 2013).

The trial court's role as a "gatekeeper" under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone*, 288 F.3d at 250. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### B. Causation Opinions

Reyes opines in his expert report that "[t]here is no evidence that Mr. William Hoffman or Mr. Bryan Hein contributed to this collision." Dkt. 22-1 ¶ 7. Reyes further concludes that: "This crash was preventable. Had Laurel Barnhill (Unit 1) been more attentive, maintained a proper following distance, and controlled her vehicle's speed, the sequence of collisions would not have occurred. The above-listed items caused the crash in question." *Id.* ¶¶ 10-11. Defendant argues that these opinions are inappropriate "legal opinions concerning what caused the accident in this case" and not based on sufficient facts or data. Dkt. 22 at 2-3. The Court disagrees.

Testimony in the form of an opinion or inference otherwise admissible "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact. FED. R. EVID. 704(a). Although Reyes may not tell the jury what results to reach on the claims asserted by Plaintiff, he may testify as to causation, even if that is a legal issue in this case. *See Marchlewicz v. Bros. Xpress, Inc.*, No. SA-19-CV-00996-DAE, 2020 WL 7319550, at *4 (W.D. Tex. Dec. 10, 2020) (allowing expert to testify on the cause of a car accident "even if that is a legal issue in this case"); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239-40 (5th Cir. 1983) ("FED. R. EVID. 704 abolishes the per se rule against testimony regarding ultimate issues of fact."). The Court finds that Defendant's objections to Dr. Reyes' causation and reconstruction analysis are more appropriately handled through cross-examination at trial. *Marchlewicz*, 2020 WL 7319550, at *4.

### C. Opinion on Conclusions of Law

Reyes opines in his expert report that:

> Laurel Barnhill (Unit 1) violated Texas Transportation Code § *545.062. FOLLOWING DISTANCE* and § *545.351. MAXIMUM SPEED REQUIREMENT* when she failed to maintain a safe following distance and control the speed of her vehicle as she approached and struck the rear of Unit 2 (Hoffman).

8

Dkt. 22-1 ¶ 8. Defendant objects to this opinion as an inappropriate legal conclusion. The Court agrees. Because "an expert may *never* render conclusions of law" this opinion must be stricken. *Reitz*, 85 F.4th at 788. Defendant's Motion to Exclude Dr. Reyes' testimony is **GRANTED** as to this objection and **DENIED** on all other grounds.

### V. Motion to Exclude Dr. Randall Dryer's Testimony

The required disclosure of expert witnesses under Rule 26 differs depending on the characterization of the witness. If the expert is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then Rule 26(a)(2)(B) requires the disclosure to include a written report. If the witness need not provide a written report under Rule 26(a)(2)(B), the disclosure of the witness must state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c).

Plaintiff designated Dryer, an orthopedic spine surgeon and one of Plaintiff's healthcare providers, as a non-retained expert witness under Rule 26(a)(2)(C). Dkt. 17 at 4. Plaintiff's Designation states that Dryer was expected to testify (1) about his treatment of Plaintiff; (2) that Plaintiff's injuries and healthcare treatment "were necessitated by the collision in question and are not the result of any pre-existing conditions"; and (3) "that all medical expenses" from "all health care providers" were necessary and were reasonable. *Id.* Dryer was deposed on October 25, 2023.

Dryer first saw Plaintiff on June 22, 2020—a few months after the collision—complaining of neck and back pain. Dryer Tr., Dkt. 27-1 at 16:25-17-1. Dryer examined Plaintiff, reviewed his

9

MRIs, and recommended surgery. Plaintiff did not have the surgery. Plaintiff did not see Dryer again until August 16, 2023. *Id.* at 86:8-10.

At deposition, Dryer testified as to the reasonableness and necessity of Plaintiff's treatment administered by other healthcare providers (including MRIs, chiropractic treatment, and pain management treatment). *Id.* at 46:21-47:6. Dryer also testified that Plaintiff's total medical expenses from all healthcare providers was reasonable for the treatment provided. *Id.* at 52:5-15.1 And Dryer provided his opinion about conclusions reached by Defendant's retained expert. *Id.* at 54:21-53:23. Defendant moves to exclude this testimony because it "extends beyond his treatment of Plaintiff and should have been disclosed under Federal Rule of Civil Procedure 26(a)(2)(B)." Dkt. 27 at 3. Defendant argues that because these observations and opinions were not developed during Dryer's care and treatment, he should have been designated as an expert witness under Rule 26(a)(2)(B). Defendant points out that Dryer testified he had reviewed documents related to the litigation that were unrelated to his treatment of Plaintiff, Dkt. 27-1 at 61:8-16, and that Plaintiff's counsel sent Dryer "all of Plaintiff's medical and billing records related to the collision in question, along with the defense expert report of Renato Bonita, M.D." Dkt. 27-2 at 4.

"Although a treating physician typically need not provide a written report, where an expert's opinion extends beyond that of a treating physician an expert report may be required." *Cantu v. Wayne Wilkens Trucking, L.L.C.*, 487 F. Supp. 3d 578, 582 (W.D. Tex. 2020) (quoting *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 WL 3074420, at *4 (W.D. Tex. June 10, 2020)). Thus, a treating physician need not have to provide a written report when their opinions "are derived from the doctors' treatment and care of [the patient], and are therefore within the scope of the doctors' testimony as treating physicians." *Kim v. Time Ins.,* 267 F.R.D. 499, 503 (S.D. Tex. 2008). Moreover, "courts have held that a treating physician may rely upon their ordinary medical training

10

to opine on the causation of an injury" without being required to provide a written report. *Cantu*, 487 F. Supp. 3d at 583.[3]

The Court finds that Dryer may testify on his opinions that Plaintiff's injuries and healthcare treatment were caused by the collision to the extent those opinions were based on his treatment of Plaintiff and expertise and experience as a cervical spine surgeon. *See Cantu*, 487 F.Supp.3d at 583 (concluding that treating physician's causation testimony was sufficiently reliable because the physician "relied upon the common methodologies of his field such as review of medical history, MRIs, and the Spurling's test to determine that Plaintiff's injuries were caused by the accident"); *Perez*, 2020 WL 3074420, at *7 (concluding that treating physician's causation opinion was admissible because it was "based on [plaintiff's] reported symptoms before and after the accident, diagnostic imaging, and his own physical assessment of Plaintiff's conditions"). Dryer also may testify as to the reasonableness of Plaintiff's medical expenses based on his expertise and experience as a cervical spine surgeon. Defendant may cross-examine Dryer as to whether he is qualified to testify on those issues outside his areas of expertise.

Dryer may not testify as to opinions that were formed based solely on reports and materials prepared for this litigation.

Accordingly, Defendant's Motion to Partially Exclude Testimony of Randall F. Dryer (Dkt. 27) is **GRANTED IN PART** and **DENIED IN PART**.

---

[3] Courts have noted that "[t]he biggest concern with permitting treating physicians to testify in all circumstances without providing expert reports is that this would permit circumvention of the policies underlying the expert report requirement. A party might attempt to avoid Rule 26(a)(2)(B)'s requirement by having a treating physician testify on an issue instead of having an expert do so." *Cantu*, 487 F. Supp. at 582 (citations omitted). The Fifth Circuit has yet to decide this issue. *See United States v. Williams*, No. 20-10433, 2021 WL 2819016, at *3 (5th Cir. July 6, 2021) (stating that "some courts have held that this exception does not apply to opinions that the treating physician arrives at after treatment, for the purposes of litigation," but holding that the court "need not decide this question, which remains unsettled in this circuit").

## VI. Conclusion

- Defendant's Motion to Exclude Testimony of Michael Reyes (Dkt. 22) is **GRANTED IN PART** and **DENIED IN PART**. The Court GRANTS the Motion as to striking Dr. Reyes' opinion contained in Paragraph 8 of his Expert Report, but **DENIES** the Motion on all other grounds.

- Defendant's Motion to Partially Exclude Testimony of Randall F. Dryer (Dkt. 27) is **GRANTED IN PART** and **DENIED IN PART**. The Court excludes Dr. Dryer's testimony based solely on reports and materials prepared in anticipation of this litigation, and **DENIES** the Motion on all other grounds.

- Defendant's Opposed Motion to Extend Discovery Deadline (Dkt. 28) is **DENIED**.

- Plaintiff's Motion for Leave to File Objections to the Testimony of Defense Expert Austin Folley, M.D. (Dkt. 30) is **DENIED**.

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable David A. Ezra.

**SIGNED** on January 5, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE